**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SCOTT COBERLY,** | § | |
| | § | |
| ***Plaintiff,*** | § | **Case No. 3:10-CV-1213** |
| | § | |
| **vs.** | § | |
| | § | |
| **CHRISTUS HEALTH,** | § | |
| | § | |
| ***Defendant.*** | § | |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Respectfully Submitted,

____________________________
A. Kevin Troutman
Texas Bar No. 24056642
Lead Attorney
Joseph W. Gagnon
Texas Bar No. 00787507
FISHER & PHILLIPS LLP
333 Clay Street
Suite 4000
Houston, TX 77002
Telephone: (713) 292-0150
Facsimile: (713) 292-0151
ktroutman@laborlawyers.com

Christopher D. Lang
Texas Bar No. 24067720
FISHER & PHILLIPS LLP
500 North Akard Street
Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
clang@laborlawyers.com

**ATTORNEYS FOR DEFENDANT CHRISTUS HEALTH**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. STATEMENT OF MATERIAL FACTS ..... 2

III. SUMMARY JUDGMENT STANDARD ..... 3

IV. ARGUMENT ..... 5

A. Plaintiff's Breach of Contract Claim Fails as a Matter of Law as Plaintiff has Failed to Identify any Contract that Could Serve as the Basis for his Claim. ..... 5

B. Even if Plaintiff Identified an Actionable Contract, Defendant Modified Such Contract by Paying Plaintiff a Salary and Plaintiff Accepted Such Modification by his Continued Employment. ..... 8

C. Even if Plaintiff Identified an Actionable Contract and the Contract was Not Modified, Plaintiff's Breach of Contract Claim Fails as a Matter of Law as it is Precluded by the Doctrine of Estoppel. ..... 9

D. Plaintiff's Claim that his Salary did Not Satisfy the Salary Basis Test for the Executive Exemption Cannot be Maintained in Good Faith. ..... 11

V. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

### Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986) ........ 4

Baron v. Mullinax, Wells, Mauzy & Baab, Inc., 623 S.W.2d 457, 462 (Tex.App.-Texarkana 981, writ ref'd n.r.e.) ........ 10

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ........ 4

City of the Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 720 (Tex.App.-Fort Worth 2008, pet. denied) ........ 6

Conner v. Celanese, Ltd., 428 F. Supp.2d 628, 635 (S.D. Tex. 2006) ........ 8

Eckland Consultants, Inc. v. Ryder, Stilwell Inc., 176 S.W.3d 80, 87 (Tex.App.-Houston [1st Dist.] 2004, no pet.) ........ 10

Fed. Exp. Corp. v. Dutschmann, 846 S.W.2d 282, 283-84 (Tex. 1993) ........ 5

Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986) ........ 8

J.R. Gray Company v. Jacobs, 362 S.W.2d 167, 171 (Civ.App.-Austin 1962, ref. n.r.e.) ........ 5

Kelly v. Rio Grande Computerland Group, 128 S.W.3d 759, 766 (Tex.App.-El Paso 2004, no pet.) ........ 6

Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000) ........ 10

Lott v. Howard Wilson Chrysler-Plymouth, Inc., 203 F.3d 326, 331 (5th Cir. 2000) ........ 11

Montgomery County Hosp. Dist. v. Brown, 956 S.W.2d 501, 502 (Tex. 1998) ........ 8

Munoz v. Orr, 200 F.3d 291, 301-02 (5th Cir. 2000) ........ 4

Paniagua v. City of Galveston, 995 F.2d 1310, 1312-13 (5th Cir. 1993) ........ 7

Parker Drilling Co. v. Romfor Supply Co., 316 S.W.3d 68, 75 (Tex.App.-Houston [14th Dist.] 2010, pet. filed) ........ 6

Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 555-56 (Tex.App.-Houston [14th Dist.] 2002, no pet.) ........ 5

Williams v. First Term. Nat'l. Corp., 97 S.W.3d 798, 803 (Tex.App.-Dallas 2003, no pet.) ........ 8

**Statutes**

29 U.S.C. § 203 ........................................ 1
29 U.S.C. § 213(a)(1) ........................................ 11
29 C.F.R. § 541.708 ........................................ 11
29 C.F.R. § 541.100 ........................................ 12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SCOTT COBERLY,** | § | |
| | § | |
| *Plaintiff,* | § | **Case No. 3:10-CV-1213** |
| | § | |
| **vs.** | § | |
| | § | |
| **CHRISTUS HEALTH,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant CHRISTUS Health ("Defendant" or "CHRISTUS") files this Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment. Plaintiff's Motion for Partial Summary Judgment should be denied because Plaintiff has failed to demonstrate entitlement to judgment as a matter of law.

## I. INTRODUCTION

This is an employment case wherein Plaintiff Scott Coberly ("Plaintiff" or "Coberly") alleges that CHRISTUS (1) failed to pay him overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §203 *et seq.*, (2) retaliated against him after he complained about Defendant's purported failure to pay him overtime compensation, and (3) breached a purported contract with him – namely an offer of employment that Plaintiff contends obligated Defendant to pay him overtime wages. Plaintiff's claims (and instant motion) are fundamentally flawed and based on the faulty premise that language mistakenly included in Plaintiff's offer letter conferred rights and benefits to which he was not otherwise entitled.

Incredibly, Plaintiff moves for summary judgment on his breach of contract claim on the *sole* basis of an offer letter which expressly disclaims that it constitutes a contract. Plaintiff

cannot avoid the plain language on the face of his offer letter. As there is no other evidence in the record on which Plaintiff can conceivably base his breach of contract claim, Plaintiff's Motion for Partial Summary Judgment must be denied. It is axiomatic that Defendant could not have breached a nonexistent agreement.

Plaintiff also moves for summary judgment on Defendant's affirmative defense that Plaintiff was properly classified as an "exempt" employee under the executive exemption to the Fair Labor Standards Act, on the sole basis that Plaintiff was not paid on a salary basis of at least $455 per week. Through this argument, Plaintiff tacitly admits that he otherwise satisfies the requirements of the executive exemption. More importantly however, Plaintiff's claim is doomed because he admits in his Brief in Support that he was paid "the same salary regardless of how many hours he worked in a workweek." The undisputed payroll documents in the record evidence that Plaintiff was paid a salary of $860.00 per week. Accordingly, Plaintiff's contrary arguments are nonsensical and cannot be maintained in good faith.

## II. STATEMENT OF MATERIAL FACTS[1]

Scott Coberly began working for CHRISTUS St. Joseph Village – Coppell ("St. Joseph Village Coppell") as its Senior Chef on November 26, 2008. (APP 001 ¶3; 066 ¶3). During pre-employment communications, then Director of Dining Services Ruby Watts explained to Mr. Coberly that the position for which he was being considered was classified as "salaried, exempt." (APP 066 ¶4). However, a human resources representative prepared an offer letter to Mr. Coberly dated November 18, 2008, mistakenly stating that Mr. Coberly would be classified as "non-exempt" and that he would be eligible for overtime pay when he worked more than forty

[1] This statement of facts is limited to issues having a direct relationship to Plaintiff's breach of contract claim and his classification as an "exempt" employee. A full statement of facts will be presented in Defendant's Brief in Support of its Motion for Summary Judgment.

hours during a workweek.[2] (APP 001 ¶4; 004; 066 ¶5; 070). Ms. Watts did not recognize that the offer letter she signed incorrectly stated that the position was considered "non-exempt." (APP 066 ¶5). In conjunction with the offer letter, Mr. Coberly reviewed the Job Description for the position of Senior Chef and signed a Job Description acknowledgment which expressly noted that the position of Senior Chef was considered "exempt." (The offer letter expressly referred to and incorporated this job description.) (APP 001 ¶6; 046-049; 066 ¶6; 072-075; 098-099; 128-132).

From the date Mr. Coberly started his employment, he was paid on a salary basis of $860.00 per week. (APP 001 ¶5; 006-044; 068 ¶13). Mr. Coberly regularly entered his own time into the St. Joseph Village – Coppell payroll system, but unlike non-exempt employees who were paid by the hour, Mr. Coberly did not "clock in" or "clock out." (APP 002 ¶8; 067 ¶10). Mr. Coberly and other exempt employees simply entered "8" hours for ten days in each pay period, indicating whether they actually worked or were off work on those days. (APP 002 ¶8; 067 ¶10). This facilitated tracking employees' paid time off. (APP 067 ¶7). Additionally, every time Mr. Coberly entered his data into the payroll system, the input screen showed that his status was "exempt." (APP 002 ¶8; 051; 067 ¶10; 092).

Upon receiving his first paycheck, Mr. Coberly inquired as to why he did not receive any overtime pay. (APP 001-002 ¶7; 067 ¶9). St. Joseph Village – Coppell Administrator Kim Bomgardner and Ms. Watts personally explained to Mr. Coberly that his offer letter was incorrect insofar as it stated that he was classified as a "non-exempt" employee. (APP 001-002 ¶7; 067 ¶9). They clarified that he was indeed considered "exempt," would receive a salary, and was not eligible for overtime pay. (APP 001-002 ¶7; 067 ¶9). In fact, the Senior Chef position

[2] Sandy York, Defendant's former Director of Human Resources, testified that Human Resources simply made a mistake and pulled the wrong template when preparing Mr. Coberly's offer letter. (APP 134).

had always been classified as "salaried, exempt." (APP 001 ¶5; 068 ¶13; 134). Further, Robert Lopez, who had replaced Ms. Watts as Director of Dining Services, also informed Mr. Coberly that he was only being paid for forty hours per week, *i.e.*, that he was being paid on a salary basis. (APP 114-121).

Mr. Coberly did not raise another question or complaint to Ms. Bomgardner contending that he should have received overtime pay until well over a year later, on February 22, 2010, *after* he was informed that he was being terminated for mistreating associates who reported to him. (APP 122-123).

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party initially bears the burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets the burden, Rule 56 requires that the opposing party go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. In determining whether a genuine issue exists for trial, the Court shall view the evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 301-302 (5th Cir. 2000).

## IV. ARGUMENT

### A. Plaintiff's Breach of Contract Claim Fails as a Matter of Law as Plaintiff has Failed to Identify any Contract that Could Serve as the Basis for his Claim.

As an initial matter, Plaintiff's breach of contract claim fails as a matter of law because Plaintiff has failed to identify any contract that could serve as the basis for his claim. To establish an enforceable contract, Plaintiff must prove: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555-56 (Tex.App.–Houston [14th Dist.] 2002, no pet.). Here, Plaintiff's breach of contract claim fails as a matter of law because he has failed to establish there was an enforceable contract between him and the defendant.

The offer letter upon which Plaintiff bases his claim includes express disclaimer language stating that it does *not* constitute a contract. (APP 126; 128). Specifically, the letter states:

> This offer of employment with CHRISTUS Health is not intended to be an employment agreement or a contract for any specific period time period or to imply any specific length of employment.

(APP 126; 128). It is well established that contractual interpretation is to be construed in accordance with the plain language of the document. *J.R. Gray Company v. Jacobs*, 362 S.W.2d 167, 171 (Civ.App.–Austin 1962, ref. n.r.e.). Based on the plain language of the offer letter, this correspondence cannot constitute a contract between Plaintiff and Defendant. *See, e.g., Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283-84 (Tex. 1993) (finding no enforceable contract as a matter of law due to presence of express disclaimer language in document on which plaintiff based her breach of contract claim).

Plaintiff's breach of contract claim also fails as a matter of law as Plaintiff is unable to establish a "meeting of the minds" between Plaintiff and Defendant. A meeting of the minds

describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract. *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex. App.–Fort Worth 2008, pet. denied). In determining whether mutual assent is present to establish a meeting of the minds, courts consider the communications between the parties, the acts and circumstances surrounding the communications, and any course of dealing between the parties. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex.App.–Houston [14th Dist.] 2010, pet. filed) (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.3d 607, 609 (Tex. 1972)). While Texas courts generally favor validating transactions, courts must refrain from creating a contract where none exists. *Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759, 766 (Tex. App.--El Paso 2004, no pet.).

Conveniently, Plaintiff's Motion for Partial Summary glosses over the "meeting of the minds" requirement and simply presumes mutual assent. (*See* Pl. Br. at 4).[3] Despite Plaintiff's conclusory assertions, however, Plaintiff has failed to put forth any evidence whatsoever to establish a meeting of the minds between Plaintiff and Defendant. In addition to the fact that Plaintiff's offer letter expressly states that it does not constitute a contract, the communications between the parties and the acts and circumstances surrounding these communications support Defendant's position that there was no meeting of the minds.

As an initial matter, and as discussed above, Defendant's disclaimer language demonstrates the clear intent not to create binding contractual rights through its offer letter. (APP 128). Moreover, the offer letter on which Plaintiff bases his breach of contract claim expressly references and incorporates the Job Description for the Senior Chef position. (APP 128-132). The Job Description explicitly states that the position was classified as "exempt." (APP 129).

---

[3] As used herein, "Pl. Br. at __" refers to Plaintiff's Brief in Support of Plaintiff's Motion for Partial Summary Judgment.

Plaintiff admitted reviewing the job description on CareerBuilder.com and in fact signed the job description on or around the same day he received Defendant's offer letter. (APP 97-98). To the extent Plaintiff claims that the offer letter memorializes the terms of an oral agreement with Defendant – which Plaintiff has not alleged – Defendant's classification of the Senior Chef job as "exempt" (and communication of such classification) belies such a claim. Moreover, during pre-employment communications, then Director of Dining Services Ruby Watts explained to Plaintiff that the position for which he was being considered was classified as "salaried, exempt."[4] (APP 066 ¶4). Accordingly, the acts and circumstances surrounding Plaintiff's offer letter demonstrate that there was no meeting of the minds and thus no enforceable agreement.

Plaintiff's reliance on *Paniagua v. City of Galveston* is misplaced and inapposite. In *Paniagua*, the plaintiff alleged that the City of Galveston had breached the terms of its employment contract with him – terms that he alleged were embodied in the City of Galveston Personnel Rules and Regulations. *Paniagua v. City of Galveston*, 995 F.2d 1310, 1312-13 (5th Cir. 1993). The Magistrate found that the standby pay provision at issue in Galveston's Personnel Rules and Regulations constituted a term and condition of the plaintiff's employment contract with the city. *Id.* at 1314. In affirming the Magistrate's ruling, the 5th Circuit expressly noted that the *absence* of contractual disclaimer language in the Rules and Regulations supported the Magistrate's determination that the standby provision became part of the terms of plaintiff's employment contract. *Id.* at 1314-15 (holding that the Magistrate's ruling was not clearly erroneous). Here, Plaintiff bases his breach of contract claim on a document containing precisely the type of contractual disclaimer language that the *Paniagua* court found absent. Such disclaimer language demands an opposite result. *See, e.g., Dutschmann*, 846 S.W.2d at 283-84;

[4] During the initial interview, Plaintiff and Ms. Watts spoke in terms of a "salary." Plaintiff admittedly told Ms. Watts he was making an annual salary of $40,000 at Lewisville Estates, and Ms. Watts responded that the pay for the Senior Chef position was in that range. (APP 094-095).

*Williams v. First Term. Nat'l. Corp.*, 97 S.W.3d 798, 803 (Tex. App.–Dallas 2003, no pet.) (no employment contract where handbook contains express disclaimer).

Because Plaintiff has not identified an actionable contract on which to base his breach of contract claim or otherwise establish a meeting of the minds between Plaintiff and Defendant, Plaintiff's breach of contract claim fails as a matter of law. Defendant could not have breached a nonexistent agreement. Thus, because Plaintiff cannot establish his *prima facie* case, his Motion for Partial Summary Judgment must be denied.

**B. Even if Plaintiff Identified an Actionable Contract, Defendant Modified Such Contract by Paying Plaintiff a Salary and Plaintiff Accepted Such Modification by his Continued Employment.**

Even if Plaintiff was able to identify an actionable contract – something he cannot do here – Plaintiff's damages would be limited insomuch as Defendant modified the contract by paying, and by Plaintiff accepting, a salary constituting pay for all hours worked. It is undisputed that Plaintiff was employed on an "at will" basis. (APP 096). Accordingly, Defendant was free to change the terms and conditions of Plaintiff's employment or otherwise terminate Plaintiff's employment at any time, in its discretion. *See Montgomery County Hosp. Dist. v. Brown*, 956 S.W.2d 501, 502 (Tex. 1998).

Generally, when an employer notifies an "at will" employee of changes in employment terms, the employee must accept the new terms or quit. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986). If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law. *Id.* To prove modification an employer must show that (1) it notified the employee of the change; and (2) the employee accepted the change. *Id.*; *Conner v. Celanese, Ltd.*, 428 F. Supp.2d 628, 635 (S.D. Tex. 2006). Here, it is undeniable that both conditions are met.

With respect to the first element, it is undisputed that Plaintiff was notified that he was being paid on a salary basis. Shortly after Plaintiff started working for St. Joseph Village – Coppell, Ms. Watts showed Mr. Coberly how exempt employees were to keep track of their time (APP 067 ¶8; 077-090).[5] Plaintiff admits that he questioned his pay upon receiving his first paycheck (on or around December 12, 2008) and that he was promptly informed that he was only being paid for forty hours per week, *i.e.*, that he was being paid on a salary basis (APP 114-121). Moreover, St. Joseph Village – Coppell Administrator Kim Bomgardner and Ruby Watts personally explained to Plaintiff that his offer letter was incorrect to the extent it stated that he was classified as a "non-exempt employee." (APP 001-002 ¶7; 067 ¶9). They clarified that he was indeed considered "exempt," would receive a salary, and was not eligible for overtime pay. (APP 001-002 ¶7; 067 ¶9). While Plaintiff may not have been happy about this "change," he clearly understood that his options were to accept this modification or resign. (APP 121 ("I could accept how it is or resign")). By continuing working with knowledge of the change to his pay, Plaintiff accepted the modification as a matter of law. *Hathaway*, 711 S.W.2d at 229.

Accordingly, even if Plaintiff was able to identify an actionable contract – something he cannot do here – Plaintiff's damages, if any, would be limited to the temporal period of no more than two weeks before Defendant reiterated in no uncertain terms that he was only being paid for forty hours per week, *i.e.*, that he was being paid on a salary basis.

### C. Even if Plaintiff Identified an Actionable Contract and the Contract was Not Modified, Plaintiff's Breach of Contract Claim Fails as a Matter of Law as it is Precluded by the Doctrine of Estoppel.

Even if Plaintiff was able to identify an actionable contract – which again, he cannot do here – and the contract was not modified, Plaintiff's breach of contract claim still fails as a

[5] Each time that Plaintiff logged into the Kronos payroll system, the system displayed his status as "exempt" whenever Plaintiff scrolled over his name. (APP 002 ¶8; 051; 067 ¶10; 092).

matter of law as it is precluded by the doctrine of estoppel. Quasi-estoppel is an equitable doctrine that prevents a party from asserting, to another's disadvantage, a right that is inconsistent with a position previously taken by that party. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Quasi-estoppel prohibits a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 87 (Tex. App.–Houston [1st Dist.] 2004, no pet.). To establish a defense of quasi-estoppel, a defendant must show (1) the plaintiff acquiesced to or accepted a benefit under a transaction; (2) the plaintiff's present position is inconsistent with its earlier position when it acquiesced to or accepted the benefit of the transaction; and (3) it would be unconscionable to allow the plaintiff to maintain his present position, which is to another's disadvantage. *Lopez*, 22 S.W.3d at 864.

Here, Plaintiff accepted Defendant's payments of a weekly salary for as many, or as few, hours he worked in a workweek. (APP 112-113; 135). It is undisputed that Plaintiff accepted his bi-weekly paycheck of such salary and deposited it. Plaintiff's acceptance of his weekly salary is inconsistent with his present claim that he was entitled to overtime if and when he worked over forty hours during a workweek. Finally, it would be unconscionable to allow Plaintiff to maintain his present claim for overtime wages when he previously accepted the benefit of his weekly salary, regardless of how many hours he actually worked. Defendant would undoubtedly be disadvantaged by being required to pay overtime pay in addition to the salary it already paid Plaintiff. *See, e.g., Baron v. Mullinax, Wells, Mauzy & Baab, Inc.*, 623 S.W.2d 457, 462 (Tex. App.–Texarkana 1981, writ ref'd n.r.e.) (referring law firm would be disadvantaged by

attorney's refusal to pay referral fee). Accordingly, Plaintiff's Motion for Partial Summary Judgment should be denied in accordance with the doctrine of quasi-estoppel.

**D. Plaintiff's Claim that his Salary did Not Satisfy the Salary Basis Test for the Executive Exemption Cannot be Maintained in Good Faith.**

As a throw-in, Plaintiff also moves for summary judgment on Defendant's affirmative defense that Plaintiff was properly classified as an "exempt" employee under the executive exemption to the Fair Labor Standards Act on the *sole* basis that Plaintiff was not paid on a salary basis of at least $455 per week. This argument cannot be maintained in good faith as Plaintiff himself *admits* in his Brief in Support that he was paid **"the same salary regardless of how many hours he worked in a workweek"** and the record plainly reflects that Plaintiff's weekly salary exceeded $455 per week. (*See* Pl. Br. at 3; APP 001 ¶5; 006-44; 124).

The Fair Labor Standards Act exempts from its overtime pay requirements any salaried employee who works in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)( 1) (the "White Collar" exemptions). An employee who performs a combination of exempt duties may also qualify. *See* 29 C.F.R. § 541.708. As acknowledged by Plaintiff, the determination concerning an employee's exempt status is a question of law for the court. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). Here, from the first day of his employment through the date of his termination, Plaintiff unequivocally performed job duties that qualified him as an "exempt" employee under the executive exemption and the administrative exemption, as well as a combination of the two. (APP 002 ¶10; APP 067 ¶12).

To qualify as "exempt" under the executive exemption, an employee must (1) be compensated on a salary basis at a rate of not less than $455 per week; (2) have a primary duty in managing the enterprise in which the employee is employed or of a customarily recognized department of subdivision thereof; (3) customarily and regularly direct the work of two or more

other employees; and (4) have the authority to hire or fire other employees or whose suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100. Plaintiff does not dispute that he satisfied these other criteria to be classified as "exempt" pursuant to the executive exemption. In his deposition testimony, Plaintiff admitted that he was performing the exact duties that would cause him to be considered exempt. (APP 099-111). To the extent Plaintiff claims he was not paid on a salary basis, such a claim fails as a matter of law based on the undisputed facts in the record.

As stated previously, Plaintiff admits in his Brief in Support of his Motion for Partial Summary Judgment that he was paid "the same salary regardless of how many hours he worked in a workweek." (Pl. Br. at 4). Plaintiff's position of Senior Chef was classified as exempt and Plaintiff's earning statements consistently reflect that he was paid on a salary basis of $860.00 per week (plus varied amounts for a BlackBerry reimbursement and/or other fringe benefits). (APP 001 ¶5; APP 5-44). Because there is no evidence that Plaintiff was paid on any basis other than "salaried" and based on the undisputed evidence in the record, Plaintiff's Motion for Partial Summary Judgment on Defendant's affirmative defense must be denied.

## V. CONCLUSION

For all of these reasons, Plaintiff's Motion for Partial Summary Judgment should be denied and Plaintiff's claims should be forthwith dismissed with prejudice. Defendant should be granted such other and further relief to which it may be entitled.

Respectfully Submitted,

/s/ Christopher D. Lang
A. Kevin Troutman
Texas Bar No. 24056642
Lead Attorney
Joseph W. Gagnon
Texas Bar No. 00787507
FISHER & PHILLIPS LLP
333 Clay Street
Suite 4000
Houston, TX 77002
Telephone: (713) 292-0150
Facsimile: (713) 292-0151
ktroutman@laborlawyers.com

Christopher D. Lang
Texas Bar No. 24067720
FISHER & PHILLIPS LLP
500 North Akard Street
Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
clang@laborlawyers.com

**ATTORNEYS FOR DEFENDANT CHRISTUS HEALTH**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2011, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept such Notice as service of this document by electronic means.

/s/ Christopher D. Lang
Attorney for Defendant